**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-13-0003145**
**28-FEB-2018**
**10:40 AM**

NO. CAAP-13-0003145

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

BARBARA POLUMBO, Plaintiff/Counterclaim Defendant/
Cross-Claim Defendant/Appellant,
v.
THEODORE GOMES and GWENDOLYN GOMES,
Defendants/Counterclaimants/Third-Party Plaintiffs/Appellees,
and
JEFF ANDERSON,
Third-Party Defendant/Cross-Claimant/Appellee,
and
JOHN DOES 1-50; JANE DOES 1-50; DOE CORPORATIONS,
LIMITED LIABILITY COMPANIES OR OTHER ENTITIES 1-50,
Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 08-1-217K)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Reifurth and Ginoza, JJ.)

This appeal involves disputes between neighbors regarding the scope, use, and maintenance of an easement. Plaintiff-Appellant Barbara Polumbo (Polumbo) holds a fifty-foot wide easement for road and utility purposes running through property owned by Defendants-Appellees Theodore Gomes (Mr. Gomes)

and Gwendolyn Gomes (Mrs. Gomes) (collectively, the Gomes).[1] In a jury-waived bench trial, the Circuit Court of the Third Circuit (Circuit Court)[2] ruled that the Gomes were entitled to use their property in a manner that imposed certain restrictions on Polumbo's use of the easement. The Circuit Court, in particular, ruled that the Gomes could keep in place and continue to use gates that run across the easement. In making this ruling, the Circuit Court relied on a "Stipulated Settlement" between the Gomes and Polumbo's predecessor in interest, which was the genesis of the easement. The Circuit Court also ruled that Polumbo, by her conduct, had given up her right to maintain the easement, and it permanently enjoined Polumbo from performing any further clearing, grubbing, or grading of the easement.

On appeal, Polumbo contends that the Circuit Court erred in: (1) imposing limitations on the easement when no conditions or restrictions were contained in the warranty deed; (2) considering evidence that contradicted facts that had been conclusively established under Hawai'i Rules of Civil Procedure (HRCP) Rule 36(b) by Mr. Gomes' pretrial admissions; (3) concluding that Polumbo had actual or inquiry notice of easement limitations not present in her chain of title; (4) restricting Polumbo's access to her property and depriving her of her right to maintain the easement; and (5) awarding costs against Polumbo.

As explained in greater detail below, we conclude that because the terms of the warranty deed granting the easement were ambiguous with respect to the scope of the easement, the Circuit Court was entitled to consider the Stipulated Settlement to determine the intent of the parties who created the easement. The Circuit Court was also entitled to permit the Gomes to make reasonable use of their property so long as the Gomes' use did not unreasonably interfere with Polumbo's use of the easement.

---

[1] Mr. Gomes passed away while this appeal was pending.

[2] The Honorable Ronald Ibarra presided.

Based on these principles, we conclude that the Circuit Court did not err in permitting the Gomes to maintain gates across the easement, subject to conditions it imposed that were designed to ensure Polumbo's continued access to her property over the easement. Based on our analysis, we need not reach the questions of whether the Circuit Court erred in considering evidence contradicting Mr. Gomes' pretrial admissions and whether the Circuit Court erred by concluding that Polumbo had actual or inquiry notice of the Stipulated Settlement. We also conclude that the Circuit Court erred in concluding that Polumbo had given up her right to maintain the easement and in permanently enjoining Polumbo from performing any further clearing, grubbing, or grading of the easement. We vacate the Circuit Court's award of costs and remand for further consideration of the cost award in light of our decision in this appeal.

BACKGROUND

I.

A.

By warranty deed dated June 13, 1974, the Gomes acquired an undivided 67.158/190.059 interest in property owned by Neola Younker. The warranty deed contained a written agreement calling for Neola and Earl Younker (the Younkers) to subdivide the property to create separate lots for the Gomes and Ms. Younker. In 1979, the Gomes sued the Yonukers to compel the subdivision. The lawsuit resulted in a "Stipulated Settlement" that was approved and ordered by the Circuit Court and was filed in the Circuit Court on January 19, 1980 (Stipulated Settlement). The Stipulated Settlement provided for the creation of separate lots for the Gomes and the Younkers. The Stipulated Settlement also provided for access to the Younkers property by a fifty-foot wide easement running along the westerly/makai and southerly/Ka'u sides of the Gomes property. With respect to the easement, the Stipulated Settlement provided:

> Plaintiffs [(the Gomes)] shall have the right to use the above referred to fifty (50) foot wide strip of land

3

> prior to and after granting an easement thereon to
> Defendants [(the Younkers)] for such purposes as [the Gomes]
> may have been using this land prior to the execution of this
> Stipulation, i.e., such purposes as grazing livestock,
> growing taro, access to adjoining property as well as [the
> Gomes'] property, and the like, and any other past, present
> or future reasonable use so long as [the Younkers] may also
> use the easement for the utility and access purposes for
> which the easement is granted.

Although the Stipulated Settlement was filed in the Circuit Court on January 19, 1980, it was not recorded in the Bureau of Conveyances of the State of Hawai'i until March 12, 2010, after Polumbo acquired her property.

On September 2, 1982, the County of Hawai'i granted a variance to the Younkers in their subdivision application, enabling them to create a twenty-foot wide dirt road in lieu of the standard agricultural pavement requirement. The Younkers installed the approximately twenty-foot wide unpaved road in 1982. On February 2, 1983, the Younkers and the Gomes signed mutual deeds conveying to one another the respective lots created by the subdivision. The deeds were recorded with the Bureau of Conveyances on July 5, 1983.

The 1983 Deed to the Younkers contains the following language describing the easement:

> Together with a 50 Foot Wide Road Easement from the
> Government Road for road and utility purposes in favor
> of the above described Lot 2 [(the Younkers lot)]
> running along the Westerly and Southerly boundaries of
> Lot 1 [(the Gomes lot)].

The 1983 Deed to the Younkers also provides:

> AND the said Grantor, in consideration of the
> premises, does hereby for himself and his heirs,
> administrators and executors, covenant and agree to and with
> said Grantee, that he is lawfully seized in fee simple of
> the premises hereby conveyed; that he has good right to sell
> and convey the said premises; that the same are free and
> clear of and from all encumbrances EXCEPT as aforesaid, and
> EXCEPTING, ALSO, current real property taxes and assessments
> chargeable against the property, and that he will and his
> heirs, administrators and executors shall WARRANT AND DEFEND
> the same unto the said Grantee and the Grantee's heirs,
> administrators, executors and assigns against the lawful
> claims and demands of all person EXCEPT as aforesaid.

When the Younkers created the bulldozed unpaved roadway on the easement, they breached several paddock walls on the Gomes property. The breached paddocks were used by the Gomes for the grazing of cattle and horses. The Gomes installed three gates across the easement: Gate 1 was a locked gate installed where the easement intersected Papa Homestead Road. Gates 2 and 3 were installed in the area of the breached paddock walls and were unlocked. Mr. Gomes installed Gate 4 in 1977 by Papa Farms, before the easement road was constructed. Mr. Gomes moved Gate 4 in 1999 to where the easement leads into the Polumbo property to separate his property from the Polumbo property.[3]

B.

Polumbo first visited the Younkers property in 1986 or 1987, after responding to an advertisement in an Arizona newspaper. To access the Younkers property, she had to pass through the locked Gate 1 and the unlocked Gates 2 and 3. Polumbo's initial offer to acquire the Younkers property was rejected. Several months later, Polumbo drafted and signed a "Purchase Contract and Receipt" dated July 2, 1987. The document was silent as to the removal of the gates or the use of the easement.

Prior to opening escrow on the Younkers property, Polumbo met Mr. Gomes on his property in July 1987. Polumbo learned that another person, Rudy Hirota (Hirota), was interested in buying the Younkers property. Mr. Gomes told Polumbo that he did not like Hirota accessing the Younkers property to remove trees, and Mr. Gomes explained that this was why he had placed a log across the easement blocking access to the Younkers property. On that same day, Polumbo gave the Gomes a written statement, which she claims Mrs. Gomes dictated to her. The statement read:

> You are hereby authorized to keep the gate locked
> leading to the property I am buying from Mr. and Mrs.

---

[3] The Circuit Court erroneously found that Gate 4 was installed "at the end of the easement accessing the Polumbo [property]" in 1977. Although the gate was built in 1977, it was moved to that location in 1999.

Younker. I understand this easement is for our mutual benefit and no one will be allowed to enter my property without my authorization.

On September 11, 1987, Hawai'i Escrow & Title, Inc. recorded a warranty deed (1987 Deed) conveying the Younkers property to Polumbo. The 1987 Deed conveyed the Younkers property to Polumbo: "Together with a 50 foot wide road easement from the Government Road for road and utility purposes in favor of the above described Lot [2] [(the property conveyed to Polumbo)] running along the Westerly and Southerly boundaries of Lot 1 [(the Gomes property)]." On September 23, 1987, Polumbo and the Younkers entered into an indemnity agreement, in which the Younkers agreed to indemnify Polumbo from claims raised by Hirota and others regarding their failed attempt to buy the Younkers property.

C.

After purchasing the property, Polumbo continued to live in Arizona, visiting her property in Hawai'i occasionally. Prior to visiting, she would inform the Gomes that she was coming, and Mr. Gomes would ensure the easement was clear enough for Polumbo to access her property. Polumbo was also a frequent guest at the Gomes' home, and Polumbo claims that she discussed her problems with the gates with the Gomes at these times.

The Gomes raised cattle and horses on their property for many years and at various times used the paddocks in which the easement is located to hold cattle and horses. Gates 2, 3, and 4 were used to control the areas the animals had access to and to prevent them from entering the Polumbo property. The Gomes have not owned their own horses for many years, but their daughter, Moana Johansen (Johansen), has occasionally used the paddocks for her horses since 2000. The Gomes have not kept cattle in the paddocks since 2000.

From the time Polumbo purchased the property in 1987 until 1999, the relationship between Polumbo and the Gomes was

relatively amicable.  In 1999, Johansen called Polumbo and asked her position on installing a chain across Papa Homestead Road, before the easement began.  On October 25, 1999, Polumbo's attorney, Mark Van Pernis (Van Pernis), sent a letter to the Gomes stating that Polumbo was entitled to unrestricted access through the easement and that the Gomes needed to remove all the gates.  The Gomes' attorney, Kevin Seiter, responded on November 2, 1999, that the Stipulated Settlement allowed the Gomes to use the easement exactly as they had done prior to the Stipulated Settlement.  Van Pernis acknowledged the Stipulated Settlement (his former firm had represented the Gomes in the prior litigation) and suggested alternatives such as automatic gates across the easement.  These alternatives were not adopted.

D.

In 2004, Polumbo decided that she wanted to sell her property and contacted Francis B. McClelland (McClelland), a realtor in Hawai'i, to sell it.  Polumbo did not mention any conflict with the Gomes in her 2004 emails to McClelland. McClelland did not find a potential buyer until 2007, when Jeff Raup (Raup) offered $1.2 million for the property, subject to Raup's final approval after inspection and other contingencies. Polumbo accepted the offer.  During McClelland's investigation, as part of his due diligence as the dual agent of Raup and Polumbo, McClelland discovered the Stipulated Settlement in the County's files.  Raup was looking to grow coffee on the Polumbo property, and he wanted to clear the entire 50-foot easement and to remove the four gates.

Raup later decided to cancel the contract.  On July 16, 2007, Van Pernis sent a letter to the Gomes referencing the Stipulated Settlement and stating that the "several gates, locks and chains, is unreasonable interference with [Polumbo's] right to access."

E.

On July 29, 2008, Polumbo filed her Complaint in the Circuit Court. Polumbo and the Gomes entered into mediation and were able to reach a "Draft Agreement" signed by both parties on January 21, 2010. In June 2010, Polumbo hired Third-Party Defendant Jeff Anderson (Anderson) to do work on her property. On June 7, 2010, Mr. Gomes and Johansen met with Anderson on the easement and advised him not to do any work along the easement until the court case was over. On June 14, 2010, Alan Tuhy, Polumbo's new attorney, sent a letter to Anderson advising him that the Draft Agreement was a final agreement, which permitted Polumbo "to trim back bushes and trees overhanging the roadway and clear the shoulders of the easement." On July 7, 2010, Polumbo agreed to indemnify and hold Anderson harmless from any claims by the Gomes for clearing the easement, and Anderson began clearing the easement.

Anderson did not obtain a grading or grubbing permit from the County before beginning work on the easement, and Mr. Gomes informed the County of Anderson's activities. On July 19, 2010, Richard Omija, an employee of the County of Hawai'i Department of Public Works, went to the site and instructed Anderson to stop work. Polumbo subsequently obtained a permit and Anderson resumed work on the easement in October 2010.

On October 30, 2010, Mr. Gomes posted a notice on the easement advising Anderson that he objected to the work being done and that if the Draft Agreement were in effect, Anderson and Polumbo were violating its terms. Mr. Gomes then informed the State Historic Preservation Division (SHPD) of damage to the historic rock walls along the easement caused by Anderson's work. On November 4, 2010, at SHPD's request, the Department of Public Works issued a stop work order to Anderson. During his work on the easement, Anderson disturbed a historic rock wall. He also pushed rubbish to the side of the road and covered it with dirt.

8

II.

Prior to trial, Polumbo served requests for admission pursuant to HRCP Rule 36 on Mr. Gomes. Mr. Gomes admitted the following:

> No.1. That you did not deliver a copy of the Stipulated Settlement (See Definition) to [Polumbo] prior to her purchase of the Polumbo Parcel.
>
> No.2. That you did not inform [Polumbo] in writing of the contents of the Stipulated Settlement prior to her purchase of the Polumbo Parcel.
>
> . . . .
>
> No.5. You did not inform [Polumbo] orally of the contents of the Stipulated Judgment prior to her purchase of the Polumbo Parcel.

Mr. Gomes testified at trial that he told Polumbo about the terms of the Stipulated Settlement before she purchased her property. Mr. Gomes indicated that he was confused about the use of the terms "Stipulated Settlement" and "Stipulated Judgment" in Polumbo's request for admissions. He was also unsure of when Polumbo had purchased the property.

After hearing the evidence at trial, the Circuit Court filed its "Amended Findings of Fact, Conclusions of Law, and Order" (Order). The Circuit Court found and concluded that: (1) the easement granted to the Younkers in the court-approved Stipulated Settlement was not an exclusive easement, but permitted the Gomes to use their land for such purposes as it had previously been used, and for any other reasonable use, as long as the Younkers may also use the easement for utility and access purposes; (2) whether the owner of land over which an easement exists may erect and maintain fences or gates depends on the intent of the parties when the easement was originally created, and if an easement is ambiguous, the rules of construction call for an examination of the situation of the parties and surrounding circumstances; (3) the servient owner of an easement is entitled to impose reasonable restraints on the right of way to avoid a greater burden on the servient estate than originally

9

contemplated, so long as such restraints do not interfere with the dominant owner's use; (4) Polumbo received notice from Mr. Gomes before she purchased her property that he had been given rights to use the easement by the Stipulated Settlement; (5) the gates in question were in existence before Polumbo purchased her property, and Polumbo was aware of the gates and the condition of the easement before she purchased the property; (6) because Polumbo had actual notice of the conditions of the easement, she was not entitled to the protections provided to a bona fide purchaser under HRS § 502-83, and she was bound by the Stipulated Settlement, even though the Stipulated Settlement had not been recorded before she purchased her property; and (7) by acquiescing in the Gomes' maintenance of the easement, Polumbo gave up her right to maintain it.

Based on its findings and conclusions, the Circuit Court ordered that the following reasonable conditions would apply to the parties' use of the easement:

> Gate 1 may stay in place, for security reasons for both parcels. Gates 2 and 3 may stay in place but must remain open except when either of the paddocks contains cattle or horses. Gate 4 may stay in place, both for security for Polumbo and to keep livestock from entering Polumbo's property. When cattle or horses are not being kept in the affected paddock, it shall be Polumbo's choice whether or not to close or lock Gate 4. The Gomes may determine whether and when cattle and horses, either their own or another's, are placed in the paddocks. All gates shall be fitted with automatic openers that can be operated either from a remote control or a keypad adjacent to the gates. The parties are to agree on the appropriate automatic entry system and to divide the costs equally. Routine maintenance of the easement will be the responsibility of the Gomes. The easement must be cleared of brush and debris so that it is regularly navigable by a vehicle without four-wheel drive. The Gomes may request reimbursement from Polumbo of one half of the costs reasonably required for maintenance of the easement.

The Circuit Court also issued a permanent injunction, enjoining Polumbo and Anderson from performing any further clearing, grubbing, or grading of the easement, except that Polumbo and Anderson shall repair the historic rock wall in conformity with SHPD requirements, and they shall jointly bear the costs of repair. The Circuit Court awarded costs in favor of

10

the Gomes and against Polumbo and Anderson because the Gomes were the prevailing parties regarding the use of the gates within the easement and the repair of the historic rock wall. In accordance with its Order, the Circuit Court entered its Judgment on August 1, 2013, and this appeal followed.

DISCUSSION

I.

Polumbo contests the Gomes' placement and use of gates across the easement. In this case, Polumbo is the owner of the property that is benefitted by the easement and thus is the holder of the dominant estate. The Gomes are owners of property that is burdened with the easement and thus are the holders of the servient estate. Unless otherwise specified in the instrument creating the easement, both the holders of the dominant estate and the servient estate are obligated to act reasonably in exercising their rights and obligations pertaining to the easement. The holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with the dominant estate holder's enjoyment of the easement. Restatement (Third) of Property (Servitudes) (hereinafter "Restatement") § 4.9 (2000). The holder of the dominant estate is entitled to use the easement for its intended purpose in a manner that is reasonably necessary for its convenient enjoyment, but is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment. Id. at § 4.10.

Here, the 1983 Deed to the Younkers, which created the easement, provides for a 50-foot wide road easement for road and utility purposes. This language is also contained in the 1987 Deed from Younkers to Polumbo. The instrument creating the easement does not contain language which would serve to modify the general rule that the holders of both the dominant estate and the servient estate must act reasonably and must consider each other's rights with regard to the easement.

11

While the total width of the easement and its use for road and utility purposes is clear, the scope of the easement is ambiguous. See Dethlefsen v. Weddle, 284 P.3d 452, 459-60 (N.M. Ct. App. 2012) (holding that the scope of an easement, described as a fifty-foot wide road easement to and across said property as shown on a specified plat, was ambiguous). The language creating the easement provides no specific guidance on what kind of road and what level of access is permitted, and it provides no criteria or standards for resolving the question raised in this case: Whether the owners of the servient estate may place gates over the easement that would enhance their security and beneficial use of their property, but would also serve to impede unrestricted access by the owner of dominant estate to her property. See id.

Where the scope of an easement is ambiguous, as we conclude it is in this case, courts look to the intent of the parties creating the easement. An easement should be interpreted to give effect to the intention of the parties who created it to carry out the purpose for which it was created, as ascertained from the language of instrument and the circumstances surrounding its creation. Restatement, at § 4.1. Where the language of the instrument creating the easement is ambiguous, extrinsic evidence may be considered to discern the parties' intent in creating the easement. Dethlefsen, 284 P.3d at 458-59, 464.

Here, the Stipulated Settlement, which was the genesis for the creation of the easement, is clear and definitive evidence of the parties' intent in creating the easement. The Stipulated Settlement provides that the Gomes shall have the right to use their property in the manner in which they had used it prior to the Stipulated Settlement, including for grazing of livestock, and for other reasonable uses so long as the Younkers may use the easement for utility and access purposes for which the easement was created. Because the language of the 1983 Deed, which created the easement, is ambiguous as to the scope of the easement, the Circuit Court did not err in considering the

12

Stipulated Settlement as extrinsic evidence of the intent of the parties creating the easement and in relying on the Stipulated Settlement in deciding the case. Moreover, the terms of the Stipulated Settlement are consistent with the general rule that permits the holder of the servient estate to make any use of the servient estate that does not unreasonably interfere with the dominant estate holder's enjoyment of the easement. Restatement, at § 4.9.

We conclude that the Circuit Court did not err in relying on the Stipulated Settlement and in balancing the interests of the parties in ruling that the Gomes could keep the existing four gates in place. As the Circuit Court determined, the gates were justified by security concerns and served to enable the Gomes to use their property to keep livestock, a prior use recognized by the Stipulated Settlement. The gates were necessary to enable the Gomes to keep livestock because the construction of the access road on the easement breached paddock walls that had previously been used to contain livestock on the Gomes property. The Circuit Court's Order also imposes conditions to prevent the gates from unreasonably interfering with Polumbo's access. The Circuit Court's Order requires Gates 2 and 3 to remain open, except when the paddocks contain cattle or horses, and it gives Polumbo the right to choose whether Gate 4 will be open or closed when the Gomes are not keeping cattle or horses in the affected paddock. The Circuit Court's Order further requires that all gates be fitted with automatic openers.

Because the Circuit Court was entitled to rely on the Stipulated Settlement to construe the ambiguous deed language creating the easement regardless of whether Polumbo was a bona fide purchaser or Mr. Gomes was entitled to contradict his pretrial admissions, we need not decide Polumbo's claims of error regarding these matters.

II.

We conclude that the Circuit Court erred in ruling that Polumbo had given up her right to maintain the easement by

13

acquiescing in the Gomes' prior maintenance of the easement. The the holder of an easement has the right to maintain the easement. See Levy v. Kimball, 50 Haw. 497, 498, 443 P.2d 142, 144 (1968). The owner of the dominant estate also has the duty to repair and maintain the easement to the extent necessary to prevent unreasonable interference with the enjoyment of the servient estate, or to avoid liability of the servient estate owner to third parties. Restatement, at § 4.13.

Here, there is no indication that Polumbo's prior failure to maintain the easement interfered with the Gomes' enjoyment of the servient estate or created liability of the Gomes to third parties. Thus, Polumbo's prior failure to maintain the easement did not provide a basis for the Circuit Court to strip Polumbo of her right to maintain the easement. The Gomes provide no authority for the proposition that the dominant estate owner's acquiescence in the servient estate owners' maintenance of the easement justifies terminating the dominant estate owner's right to maintain the easement.

The Circuit Court's reliance on Rose v. Peters, 139 P.2d 983 (Cal. Dist. Ct. App. 1943) is misplaced. In Rose, the servient estate owner entered into a contract with the dominant estate owner that obligated the servient estate owner to "join in keeping the easement in repair." Rose, 139 P.2d at 984. The court held that the servient estate owner had an obligation to assist in keeping the easement in repair by virtue of his contract. Id. Here, there is no contract requiring the Gomes to maintain the easement, and it is the dominant estate owner that is being stopped from maintaining the easement. Thus, Rose in inapposite.

The Circuit Court appears to have relied on its ruling that Polumbo had given up her right to maintain the easement in issuing its injunction enjoining Polumbo and Anderson from

14

performing any further clearing, grubbing, or grading of the easement. We therefore vacate the injunction.[4/]

### III.

Because our decision in this appeal may affect the Circuit Court's determination regarding the award of costs, we vacate the Circuit Court's costs award.

### CONCLUSION

Based on the foregoing, we affirm in part and vacate in part the Circuit Court's Judgment, and we remand the case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, February 28, 2018.

On the briefs:

Robert H. Thomas
Mark M. Murakami
Tred R. Eyerly
(Damon Key Leong Kupchak Hastert)
for Plaintiff/Counterclaim
Defendant/Cross-Claim Defendant/
Appellant

Lisa Strandtman
for Defendants/Counterclaimants/
Third-Party Plaintiffs/Appellees

*Craig H. Nakamura*

Chief Judge

*Laurence M Reifurth*

Associate Judge

*Lisa M Ginoza*

Associate Judge

---

[4/] The Circuit Court may determine on remand the extent of Polumbo's right to maintain the easement in light of the scope of the easement and other relevant circumstances.

15